1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| STAN P. HARRIS, | ) 1:10-cv-01220 AWI GSA |
| | ) |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS** |
| | ) **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) **SECURITY COMPLAINT** |
| | ) |
| MICHAEL ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

11
12
13
14
15
16
17
18

### BACKGROUND

19      Plaintiff Stan P. Harris ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21  supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The

22  matter is currently before the Court on the parties' briefs, which were submitted, without oral

23  argument, to the Magistrate Judge Gary S. Austin, for findings and recommendations to the

24  District Court.

25  //

26  //

27

28                                                        1

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for supplemental security income benefits in August 2006, alleging disability as of September 14, 2004.[2]  AR 128-133.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 77-90, 99-107.  ALJ Stephen W. Webster held a hearing, and issued an order denying benefits on December 8, 2008, finding Plaintiff was not disabled.  AR 8-19.  On April 30, 2010, the Appeals Council denied review.  AR 1-3.

## Hearing Testimony

ALJ Webster held a hearing on September 24, 2008, in Fresno, California.  Plaintiff appeared and testified; he was assisted by attorney Sengthiene Bosavanh.[3]  Vocational Expert ("VE") Cheryl Chandler also testified.  AR 20-61.

At the time of the hearing, Plaintiff was forty-nine years old.  AR 24.  He currently lives with his son.  He has a driver's license and can drive.  AR 25.  Plaintiff can take care of personal grooming needs, and cooks sometimes.  He does laundry "with difficulty."  AR 25.  He struggles with household chores, and can grocery shop but it "takes [him a] long period of time."  AR 26; *see also* AR 51.

When he was asked how many hours he watched television per day, Plaintiff indicated "maybe four hours."  AR 26.  Regarding other activities, Plaintiff indicated he does not read for pleasure, play video games or use a computer.  AR 26.  Nor does he attend church, visit with family or friends, or go to the movies.  AR 26.

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2]Plaintiff has applied for benefits on three previous occasions.  His most recent previous application of March 3, 2003, was denied on September 14, 2004.  *See* AR 9.

[3]Ms. Bosavanh's name was inaccurately transcribed as "Jane Balsema" in the transcript of the administrative hearing.

Plaintiff typically gets up about 11 a.m., makes and consumes a pot of coffee, then "attempts to wash [his] dishes," and on some occasions that "takes hours." AR 27. On other days he will attempt to do laundry, clean the bathroom or change the sheets on his bed. AR 27. After eating breakfast or lunch depending upon the availability of food, Plaintiff takes his medication and talks to his "mom about getting money to pay [his] bills." AR 28; *see also* AR 29. Plaintiff explained that these activities amount to his entire day. It takes "hours" to get the floor swept and mopped because his hands and feet hurt, swell, throb and burn. Plaintiff will "do a little, go sit down for a little, do a little more, go lay down throughout the day." AR 28. He does eat dinner and then retires after midnight or one o'clock in the morning. AR 28. When he was asked whether he slept through the night, Plaintiff replied that he has "a problem sleeping." AR 28.

After earning a high school diploma, Plaintiff attended college for about a year but did not earn a degree. AR 28. He served in the United States Army as a mechanic. AR 29. Plaintiff has not worked since August 16, 2006, and does not receive welfare or food stamp assistance. AR 29.

When he was asked whether he had ever been in jail, Plaintiff indicated he had served time on three occasions: he got in trouble in the military and then served time for "child abuse and spousal abuse." AR 29. Asked specifically about the length of time spent behind bars, Plaintiff replied "two or three weeks at a time" as to each occasion. AR 29.

With regard to his health, Plaintiff suffers from depression and anger, and "pain, swelling, burning, [and] throbbing" pain throughout his neck, hands and wrists, back, right hip, knees and feet. AR 30. Plaintiff sees his physician about once a month for medications and treatment. AR 30-31. He also receives treatment at Fresno County Mental Health once a month or every other month, for medication and counseling. AR 31.

Plaintiff can sit for about fifteen to twenty minutes, can stand for "a matter of minutes," and can walk for about ten or fifteen minutes before needing to sit down. AR 32; *see also* AR

42.  The heaviest item he can lift is a gallon of milk.  While Plaintiff can pick an object up, he has difficulty holding the object because his fingers begin to ache.  AR 32.  Grasping and gripping items is difficult, as are repeated movements.  For instance, he can use scissors to make a cut but continuing to use the scissors for five minutes would "cause problems."  AR 39; *see also* AR 41.  He has braces on both hands/arms, wearing them "once a day, six hours a day" for the pain.  AR 33-34.  Dr. Henry Cain[4] gave him the braces about eight years ago.  AR 33.  He understood Dr. Cain diagnosed carpal tunnel syndrome and arthritis.  AR 38.  Plaintiff no longer sees Dr. Cain because he is no longer insured.  AR 39.

With regard to the pain in his legs, it is constant and worse when Plaintiff is standing.  AR 41.  The left leg is worse than the right, and is more swollen.  AR 42, 44.  Plaintiff also suffers from back pain on a daily basis, that "comes and goes."  Repeated motions such as bending or lifting cause pain.  AR 42.  His right knee bothers him all day if he is moving around or walking; his left knee bothers him at all times, even when he is at rest.  AR 43.  Plaintiff treats the burning in his feet by pouring alcohol on them "every five to ten minutes" when he is at home.  It makes his feet feel cooler.  He also uses Ben-Gay to treat the burning sensation in his feet.  AR 49-50.

Plaintiff's neck pain is a daily problem and restricts movement when he turns his head to the right side.  AR 44.  His right hip bothers him when he is sitting and driving.  AR 44-45.

The medications Plaintiff has been prescribed help with the pain, but do not relieve it completely.  AR 40.  The medications "bring [the pain] down to a three" on a scale of one to ten for "say four to five hours."  AR 40.  Plaintiff indicated that pain rated a "three" on such a scale would preclude him from working.  AR 40-41.

With regard to mental health issues, Plaintiff is schizophrenic, and sees "little bugs" or "little dots" at all times when he is in pain.  AR 45.  He suffers from anxiety and depression and

---

[4]The spelling of the physician's name reflects the spelling used in the transcript itself.  Later, in quoted material, the doctor's surname is spelled "Kane."

an impulse control disorder.  AR 45-46.  He becomes angry, resulting in "hitting" and yelling.
AR 46.  A disagreement will trigger his loss of control.  He does not want to be around others
because "[p]eople make [him] get in trouble."  He has been in trouble at work before for this
reason.  AR 46-47.  While employed as a facilitator at "SVS" he was often called into the
supervisor's office to be disciplined for his behavior.  AR 47-48; *see also* AR 51.  Plaintiff
believes his difficulties with people stem from the manner in which he was raised; his parents
slapped and hit him "[e]verytime [he] did something wrong."  AR 48; *see also* AR 49-50.

Asked about employment within the past fifteen years, Plaintiff indicated that he worked
at a recycling center for a period longer than six months but less than one year.  He was the
manager at the recycling facility, keeping everyone organized and assisting other employees.  He
did not prepare the work schedule or keep track of work hours, nor was he responsible for hiring
or firing employees.  He did supervise two others.  AR 35.  The heaviest weight lifted in that
position was about ten pounds in the form of a cutting torch.  AR 35; *see also* AR 38.  Plaintiff
also worked as a driver for SVS transporting handicapped people.  AR 35.  The clients were
wheelchair bound and he would load the wheelchairs into the van using a lift and secure the
wheelchairs and the clients before transport.  AR 35-37.  He worked there for about a year as a
"facilitator."  AR 36.  That position also required changing diapers about two or three times a day
as necessary.  AR 37.  Plaintiff was terminated from the position as a result of his criminal
history and the company's state licensing requirements.  AR 48.  Plaintiff has had no other full
time employment within the previous fifteen year period.  AR 36.

VE Chandler indicated Plaintiff's past work skills were not transferable.  AR 52.  The VE
was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who
could lift twenty pounds occasionally and ten pounds frequently, could sit, stand and/or walk for
six hours in an eight-hour work day, but was limited to simple routine and repetitive work.  AR
52.  The VE indicated such a worker could not perform Plaintiff's past work, however, the
hypothetical worker could perform light, unskilled work.  AR 52-53.  More specifically, the

5

individual could perform work as: material handler, unskilled and light, DOT[5] 922.587-010, with 6,700 available positions in the state; hand packager, unskilled and light, DOT 920.687-018, with 31,900 available positions in the state; or, production worker, unskilled and light, DOT 529.687-38, with 34,000 positions available in the state.  National economy figures are obtained by multiplying the state number by nine or ten.  AR 53.

In a second hypothetical, VE Chandler was asked to consider a hypothetical worker and the same factors as the previous hypothetical, with an additional limitation to only occasional contact with the public.  AR 53.  The VE indicated that the same jobs as those previously identified would remain available to this individual as well.  AR 54.

In a third hypothetical, the VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who could lift ten pounds occasionally and frequently, whom could sit or stand at will, and whom was limited to simple routine and repetitive work.  AR 54.  Plaintiff's past work would be unavailable to such a worker, however, the individual could perform unskilled sedentary work, in more limited numbers to reflect the sit/stand option limitation, such as a material handler (2,200 jobs; DOT 529.687-138), hand packager (1,000 jobs; DOT 920.687-034), and production worker (2,700 jobs; DOT 726.687-046).  AR 54-55.

In a final hypothetical posed by the ALJ, VE Chandler was asked to assume a hypothetical worker of Plaintiff's age, education and work history, who could not complete an eight-hour day or forty hour work week.  The VE indicated that such an individual would be unable to perform Plaintiff's past work.  AR 55.  Moreover, such an individual would be precluded from all work in the regional or national economy.  AR 56.

Plaintiff's attorney posed a number of questions to the VE concerning fine and gross manipulation, other functional limitations, additional unscheduled breaks, and various mental limitations, for which the VE indicated no work would be available to such an individual.  AR 56-59.

---

[5]"DOT" refers to the Dictionary of Occupational Titles.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 200-357.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 8-19.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2006.  AR 10.  Further, the ALJ identified an injury to the neck and right knee, degenerative disk disease, and schizoaffective disorder as severe impairments.  AR 10.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 10-11.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently, can sit, stand and walk for six hours in an eight-hour day, and is limited to the performance of simple, repetitive tasks.  AR 11-16.

Next, the ALJ determined that Plaintiff could not perform his past relevant work.  AR 17. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a materials handler, hand packager and production worker.  AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

1   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

2   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

3   401.  The record as a whole must be considered, weighing both the evidence that supports and

4   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

5   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

6   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

7   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

8   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

9   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

10  Cir. 1987).

11  **<u>REVIEW</u>**

12          In order to qualify for benefits, a claimant must establish that he is unable to engage in

13  substantial gainful activity due to a medically determinable physical or mental impairment which

14  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

15  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

16  such severity that he is not only unable to do her previous work, but cannot, considering his age,

17  education, and work experience, engage in any other kind of substantial gainful work which

18  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

19  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

20  Cir. 1990).

21          Here, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, erred

22  regarding his credibility analysis, and failed to meet his burden at step five.

23  //

24  //

25  //

26  //

27

28                                                          8

1

### DISCUSSION[6]

2

### *The ALJ's Consideration of the Medical Opinion Evidence*

3      Plaintiff argues that the ALJ failed to properly evaluate the opinions of Drs. Chauhan, S.

4   Damania, Collado and Middleton.  (Doc. 15 at 5-15.)  Defendant generally asserts that no error

5   occurred and the medical evidence was properly evaluated.  (Doc. 21 at 5-7.)

6          **1.     Applicable Legal Standards**

7      Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

8   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

9   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

10   physicians).  As a general rule, more weight should be given to the opinion of a treating source

11   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

12   647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

13   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

14   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

15   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

16   reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

17   F.2d 499, 502 (9th Cir. 1983).

18      The opinion of an examining physician is, in turn, entitled to greater weight than the

19   opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

20   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

21   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

22   uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

23   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

24

25          [6]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
26   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
     argument or brief is not to be construed that the Court did not consider the argument or brief.

27

28                                                          9

can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2.    ALJ's Findings

#### a.    Dr. Sanjay Chauhan

After summarizing neurologist Chauhan's 2005 reports, ALJ Webster stated as follows:

> I give some weight to Dr. Chauhan's opinion that the claimant is able to perform light work, but disagree with the postural limitations. In describing factors of disability, the doctor noted that the claimant's low back pain and cervical spine pain were slight becoming moderate; his right knee pain was slight intermittently becoming slight to moderate, and the claimant's headaches were intermittent and mild to slight. The claimant's symptoms were generally slight, which does not warrant extremes of limitations, particularly when the claimant is limited to light work overall.

AR 13. With regard to Dr. Chauhan's 2008 report, the ALJ gave no weight to the doctor's opinion that Plaintiff was temporarily disabled because the disability determination is reserved to the Commissioner, and further noted:

> I give very little weight to the limitations set forth in this and the preceding paragraph. There is no basis in evidence for such stringent restrictions. The

1
2
3
4

> doctor based his opinion on seven-year-old MRI's and EMG/NCV, which were confirmed by MRI's in 2005 showing no stenosis or foraminal narrowing and an unremarkable cervical spine.  He also said the claimant remained stable after knee surgery, and improved after the surgery.  There is no evidence to show that the claimant's condition was any worse than it was in August 2005, when he wrote the prior Permanent and Stationary Report.  Because the medical evidence does not support a change in work-restrictions, I give this opinion very little weight.

5  AR 13-14.  In both instances, ALJ Webster provided clear and convincing reasons for rejecting

6  Dr. Chauhan's opinion in total.  He did so by setting out a detailed and thorough summary of the

7  facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.

8  *Magallanes  v. Bowen*, 881 F.2d at 751.  To the degree Plaintiff argues that Dr. Chauhan's

9  opinions should have been accepted or rejected in whole, he is incorrect.  An ALJ need not

10  believe everything a physician sets forth, and may accept all, some, or none of the physician's

11  opinions. *Magallanes*, 881 F.2d at 753-754.  Moreover, where Plaintiff argues Dr. Chauhan

12  diagnosed radiculopathy in the spine and various other conditions, Plaintiff is reminded that the

13  mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v.*

14  *Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

15       While Plaintiff makes much of the doctor's diagnoses of radiculopathy, the doctor's own

16  objective examination findings are largely normal and thus appear to conflict with his diagnosis.

17  *See e.g.,* AR 322-323, 338-340.  This Court's review of Dr. Chauhan's records (AR 268-342)

18  reveals support for the ALJ's findings.  Moreover, Dr. Chauhan's opinions are contradicted by

19  those of internist Rustom Damania, M.D.

20       Dr. R. Damania performed an examination in November 2006.  AR 231-235.  After

21  taking a history from Plaintiff and recording his complaints, the doctor performed a physical

22  examination.  AR 232-234.  The doctor concluded with his general findings, noting that while

23  Plaintiff complained of pain in range of motion, there was no evidence of edema, ankylosis,

24  deformity, contracture or subluxation.  Plaintiff's motor strength was 5/5 and reflexes were

25  normal.  AR 234.  Dr. R. Damania's diagnosis: varicose veins, callous on left foot, and neck and

26  back pain without evidence of radiculopathy.  AR 234.  ALJ Webster gave greater weight to the

27
28                                              11

opinion of Dr. R. Damania, a consultative examiner, indicating he did so "because the doctor performed a thorough examination and his findings are consistent with the medical treatment records and objective evidence . . .." AR 13.  The ALJ did not err because a consultive examiner's opinion may constitute substantial evidence where it is based on the examiner's independent findings and observation.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff complains that Dr. R. Damania "reviewed only three medical records (dated October 5, 2005, November 9, [2]005, and February 14, 2006) and none of Plaintiff's objective test results." (Doc. 15 at 6.)  Plaintiff's argument is premised upon the fact that Dr. R. Damania reviewed Dr. Chauhan's medical records.  However, Dr. R. Damania's date references (AR 231) do not match any of the dates of progress notes or reports prepared by Dr. Chauhan prior to November 2006: 4/13/05 (AR 325-342); 5/20/05 (AR 334); 6/29/05 (AR 332-333); 8/4/05 (AR 319-327); 10/1/05 (AR 329-331); 11/11/05 (AR 318); 1/3/06 (AR 317); 2/21/06 (AR 316); 6/5/06 (AR 315) or 7/19/06 (AR 313).  In fact, the dates referenced by Dr. R. Damania may correlate to progress notes found in the records provided by University Medical Center.  *See* AR 206-211.  Nevertheless, Plaintiff's argument that Dr. R. Damania's opinion is somehow flawed is simply unpersuasive, particularly where Dr. Damania performed his own examination.

### b.    Shireen R. Damania, M.D.

In a somewhat confusing argument, Plaintiff essentially argues that the ALJ erred by not accepting Dr. S. Damania's report as a whole.  (Doc. 15 at 10-13.)

ALJ Webster found as follows:

> Shireen Damania, M.D. performed a psychiatric consultative evaluation of the claimant in November 2006.  The claimant described his problem as wanting to hit and hurt people and having a problem getting along with anyone.  Dr. Damania described the claimant as uncooperative, hostile, intimidating, evasive, and guarded.  He volunteered little information.  He said he "could" hurt the interviewer, "depending."  He leafed through a magazine during the interview and refused to put it down when asked.  He became angry and irritable when asked to clarify his industrial injury.  The claimant said he spent a typical day begging relatives for money and watching "Jerry Springer" and the "Taliban" on television.  The mental status exam revealed the claimant's mood was indifferent

and depressed, and at times irritable and hostile. His impulse control and frustration tolerance were impaired.  There was no evidence of a thought disorder, hallucinations, or delusions.  The claimant's memory was grossly intact, and his attention span was within normal limits.  He had average intelligence, but said 5 x 5 was 30 and 100 -7 was 97.  His insight and judgment seemed impaired.  Dr. Damania diagnosed claimant with depressive disorder not otherwise specified and impulse control disorder not otherwise specified by history.  She stated the interview was conducted briefly because the claimant was intimidating and had impaired interpersonal skills and social functioning.  Dr. Damania opined that the claimant was able to understand, remember, and carry out simple one and two-step job instructions, but would have difficulty responding appropriately to coworkers, supervisors, and the public.  He would have difficulty responding appropriately to usual work situations and dealing with changes in a routine work setting with normal supervision.

I give weight to Dr. Damania's opinion that the claimant is able to perform simple tasks, but give little weight to the remaining limitations.  The claimant was uncooperative in refusing to stop looking at a magazine during the interview, yet his treating psychiatrist repeatedly noted that he was polite, cooperative, and cordial.  Dr. Damania noted that the claimant's presentation contrasted with Dr. Collado's descriptions of him, but did not question whether he had secondary motives for acting surly with her.  Dr. Rustom Damania, who performed the physical consultative examination the same day, stated that the claimant was "cooperative and pleasant to talk to."  It is difficult for me to see any other motive for the claimant's behavior than exaggerated mental symptoms at the mental consultative exam might improve his odds to gain benefits.  Additionally, the claimant told the doctor he worked as a motorcycle mechanic, janitor, and in a restaurant, but failed to mention his only recent work as a driver for the disabled.  The claimant appeared unable to perform simple math, but I note that he has a high school diploma plus one year of college.  It is unlikely he is unable to do such simple calculations.  Dr. Damania stated the interview was brief because the claimant was intimidating, so it appears that Dr. Damania did not have complete or accurate information on which to base her opinion.

AR 14-15, internal citations omitted.

Again, an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes*, 881 F.2d at 753-754.  Here, it is obvious ALJ Webster accepted Dr. S. Damania's opinions to the degree those opinions were not affected by Plaintiff's out of character actions on the date of the examination.  In other words, the ALJ accepted her limitation to simple tasks because it is consistent with the record, but he rejected those limitations relating to Plaintiff's ability to work or interact with others because those findings are inconsistent.  This is a specific and legitimate reason for not adopting Dr. S.

1   Damania's opinion as a whole as it is supported by substantial evidence in the record.  *Andrews*

2   *v. Shalala*, 53 F.3d at 1043.

3                         **c.      Josephina A. Collado, M.D.**

4        Plaintiff asserts the ALJ erred by improperly rejecting the opinion of his "long-time

5   treating psychiatrist."  (Doc. 15 at 13-15.)

6            Dr. Collado prepared a Medical Assessment of Ability to do Work-related
         Activities (Mental) in April 2005.  She said she last evaluated the claimant in
7        October 2004.  She checked the "poor" ratings in every area of the mental
         functioning.  However, I give little weight to this opinion.  In spite of the doctor's
8        opinion that the claimant was seriously limited in every mental aspect, she stated
         he would be able to manage benefits in his own best interest, which I find
9        incongruous.  The assessment is inconsistent with the doctor's treating records,
         which showed significant improvement after this document was submitted.  At the
10       time the doctor completed this form, she had not seen the claimant for six months,
         which diminishes her reliability.  The opinion is based primarily on the claimant's
11       subjective complaints and allegations, which are less than fully credible . . ..

12  AR 15.

13       Here, ALJ Webster provided three reasons for affording Dr. Collado's opinion little

14  weight: (1) inconsistency with the medical record; (2) a lack of recent treatment in the six months

15  prior to the opinion; and (3) the opinion was based largely on Plaintiff's subjective complaints.

16       Inconsistency is a specific and legitimate reason for affording a treating physician's

17  opinion less weight.  *Magallanes v.* Bowen, 881 F.2d at 751 (a lack of supporting clinical

18  findings is a valid reason for rejecting a treating physician's opinion).  ALJ Webster specifically

19  references the fact that Dr. Collado's treating records reflect improvement following her report of

20  April 22, 2005, or are otherwise inconsistent with her overall "poor" rating assessment regarding

21  Plaintiff's mental function.  This Court's review of the record supports the ALJ's determination.

22  *Cf.* AR 354-357 to 214, 216-221, 344-347, 350.

23       The Ninth Circuit has indicated that where a treating physician's opinion is not given

24  controlling weight because it is not well supported or because it is inconsistent with other

25  substantial evidence in the record, the ALJ is instructed by Title 20 of the Code of Federal

26  Regulations section 404.1527(d)(2) to consider the factors listed in section 404.1527(d)(2)

27

28                                          14

through (6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). *Orn*, 495 F.3d at 632-633. Here then, ALJ Webster's consideration of the fact that Dr. Collado had not seen Plaintiff for more than six months before making her findings was an appropriate consideration.

Finally, the ALJ afforded Dr. Collado's opinion less weight because it was based largely on Plaintiff's subjective complaints. This too is a specific and legitimate reason because an ALJ may reject a treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989).

As explained above, this Court finds that the ALJ's findings are supported by substantial evidence and are free of legal error.

### d.    Allen Middleton, Ph.D.

In a single paragraph, cursory argument, Plaintiff contends the ALJ erred by not accepting "all of Dr. Middleton's opinions." (Doc. 15 at 15.)

Concerning the state agency physician's findings, ALJ Webster stated that his mental limitations

> are fairly consistent with the opinion of the State agency medical consultants who reviewed the record. They determined that the claimant retained the ability to understand simple directions and was cognitively intact. He was able to concentrate for two-hour increments and complete tasks. He was able to relate to co-workers and supervisors, but was limited in public contact. He was able to adapt to safety issues and simple work changes. I adopt the State agency's opinion except for the limitation on public contact. The claimant's only relevant work experience involved transporting disabled people. We have no information to conclude he was not able to get along with the people he helped. There is nothing in the record to show he had fights or lost his job because of [an] inability

15

to get along with the public.  The focus of this proceeding is to determine whether the claimant is able to perform the physical and mental activities of work.  Just because [the claimant] said he did not like people and felt like hitting someone is no guarantee that he would act out in an employment setting in which he were being paid to deal with people.

AR 14, internal citation omitted.

Once again, Plaintiff is advised that an ALJ may accept all, some or none of a physician's opinions.  *Magallanes v. Bowen*, 881 F.2d at 753-754.  Therefore, ALJ Webster was not required to accept all of Dr. Middleton's opinions.  Moreover, the ALJ provided specific and legitimate reasons for rejecting the doctor's opinions about limited public contact: such a finding is not supported by the record as a whole.  *Andrews v. Shalala*, 53 F.3d at 1043.

### The Findings Regarding Plaintiff's Credibility

Next, Plaintiff contends the ALJ improperly evaluated his testimony and credibility. (Doc. 16 at 15-19.)  The Commissioner asserts the ALJ's analysis is proper.  (Doc. 21 at 7-9.)

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

1    An ALJ may consider many factors when assessing the claimant's credibility. *See Light*

2   *v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

3   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

4   testimony by the claimant that appears less than candid, unexplained or inadequately explained

5   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

6   activities, claimant's work record, or the observations of treating and examining physicians.

7   *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  "An ALJ is

8   not 'required to believe every allegation of disabling pain' or other non-exertional impairment."

9   *Orn*, 495 F.3d at 635.

10    The first step in assessing Plaintiff's subjective complaints is to determine whether

11  Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

12  alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

13  Plaintiff had the severe impairments of injuries to the neck and right knee, degenerative disk

14  disease, and schizoaffective disorder.  AR 10.  This finding satisfied step one of the credibility

15  analysis.  *Smolen*, 80 F.3d at 1281-1282.

16    "Despite the inability to measure and describe it, pain can have real and severe

17  debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

18  working." *Fair v. Bowen*, 885 F.2d at 601.  It is possible to suffer disabling pain even where the

19  degree of pain is unsupported by objective medical findings.  *Id*.  "In order to disbelieve a claim

20  of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing

21  *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly justify the ALJ's

22  rejection of the plaintiff's excess pain testimony.  *Id*. at 602.  However, an ALJ cannot be

23  required to believe every allegation of disabling pain.  "This holds true even where the claimant

24  introduces medical evidence showing that he has an ailment reasonably expected to produce

25  some pain." *Id*. at 603.

26  //

27

28                                                    17

ALJ Webster's credibility analysis provides as follows:

The claimant testified at the hearing to severe symptoms and limitations but his testimony was not persuasive or convincing. The claimant testified he has a license and drives. He stated he cares for his personal needs, cooks, does laundry with difficulty, attempts to clean, washes dishes, and shops, but it takes a long time. He said he does no yard work, no reading, no computer or video games, no visiting, no movies, and no church. He said he does chores on different days, and takes hours to sweep and mop. The claimant stated he is able to stand for a few minutes, walk for 10 to 15 minutes, and sit for 15 to 20 minutes. I note that the objective medical evidence consists of MRI's and EMG/NCS studies that showed only mild degenerative disc disease and normal cervical spine. In his consultative examination, Dr. R. Damania saw no evidence of radiculopathy. The claimant had knee surgery and recovered well, so there is no basis for his alleged restrictions on activity.

The claimant testified that he can lift a gallon of milk and pick up small objects but has a problem holding them. He said he has braces on both arms and uses them for six hours a day for the pain. He stated he obtained the braces about eight years ago from Dr. Kane for carpal tunnel syndrome. He stated if he had to use his hands repeatedly, he would be in pain after two minutes, then had to stop for 30 to 60 minutes. I note that physical examinations performed by treating physician Chauhan and consultative examiner Damania made no mention of carpal tunnel syndrome, wrist pain, upper extremity weakness, sensory impairment, or wrist braces. [T]here is no evidence of hand or wrist pain in the record, including neurologist records. The prior decision made no mention of any medical evidence of carpal tunnel syndrome, wrist pain, or wrist braces.

The claimant testified that he has consent pain in both legs, worse when standing, and worse on the left than the right. The claimant testified that he has back pain daily that comes and goes when he bends, mops, and vacuums. He said he has right knee pain when he walks, but no pain when not walking. He said he has left knee and neck pain all day. He stated he can turn his head to the left but not to the right, and can look up and down. The claimant testified that his feet swell all the time and he pours alcohol on them every five to ten minutes for the burning. He said his right calf swells at times, and his right hip hurts when he sits. I note that the claimant did not complain to his treating physicians about such pain, and the objective evidence does not support such severe symptoms or such dramatic remedies.

The claimant testified that he was in jail three times, each for a couple of weeks, and the last two were for spousal and child abuse. However, he told Dr. R. Damania that he was in prison seven years earlier. The claimant testified that he sees little bugs when he has pain. He told Dr. Collado that he had auditory hallucinations, although that is not supported elsewhere in the record, [and in any event,] there is no medical mention of visual hallucinations. The claimant said he has an impulse control problem, loses control, and hits and yells. He stated he does not want to be around people because he ends up hitting them. There is no documentation in the record that the claimant goes around hitting people for no reason. I note that the claimant did not receive any psychological counseling and refused to attend programs that might have been useful in resolving his alleged anger management issues. This is inconsistent with an individual with disabling mental impairments. The claimant testified that he has no friends and has trouble sleeping. He said he has no problem with drugs or alcohol. I note that the claimant told Dr. Rustom Damania that he had no history of drug or alcohol

18

abuse, yet Dr. Collado indicated the claimant had a history of alcoholism.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant had only one full substantial gainful activity year and only two years with any earnings at all in the past relevant 15 years. Such a dismal earnings history seriously diminishes the claimant's credibility as it appears he is not motivated to work. Similarly, the claimant's history of jail time, alcohol abuse, spousal abuse and child abuse further diminish his credibility.

Thus, because of the lack of objective evidence to support the claimant's allegations of physical and mental disability, and because of the inconsistencies in the record and testimony, I am able to give little weight to the claimant's subjective complaints.

AR 16-17, internal citations omitted.

Plaintiff's argument that the ALJ "failed to provide clear and convincing reasons" for rejecting his testimony is not persuasive. The ALJ provided multiple clear and convincing reasons for doing so, including the following: a lack of objective medical evidence to support Plaintiff's assertions; Plaintiff's ability to perform activities of daily living; Plaintiff's reputation for truthfulness; conflicts between Plaintiff's testimony and the record; a lack of treatment; and Plaintiff's poor work history.

The foregoing reasons are all proper reasons to discount Plaintiff's credibility. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Fair v. Bowen*, 885 F.2d at 603-604 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility); *Smolen v.*

1  *Chater*, 80 F.3d at 1284 & *Orn v. Astrue*, 495 F.3d at 638 (the ALJ can consider the claimant's

2  reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

3  testimony by the claimant that appears less than candid, unexplained or inadequately explained

4  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

5  activities, claimant's work record, or the observations of treating and examining physicians).

6        Plaintiff takes issue with a number of the ALJ's findings, yet, in the final analysis, what

7  Plaintiff is asking this Court to do is to substitute his version of the record for that of the ALJ.

8  This Court will not do so.

9        With specific regard to the ALJ's reference to Plaintiff's criminal history, the record only

10  references two of Plaintiff's admitted three crimes or offenses: spousal abuse and child abuse.

11  Plaintiff testified about serving time in jail while in the military, but that offense is not identified.

12  *See* AR 29.  Notably too, Plaintiff himself testified that he was fired from his job as a facilitator

13  at SVS for his past criminal history and thus did not meet the agency's licensing requirements.

14  AR 48.  It may be that previous findings made in response to Plaintiff's prior applications for

15  benefits - available to the ALJ - referenced information permitting ALJ Webster to legitimately

16  consider Plaintiff's entire criminal history, such that his history may involve a crime of

17  dishonesty.  *See Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (ALJ properly

18  discredited claimant based on prior felony convictions including robbery and showing false

19  identification to a peace officer); *Light v. Social Security Administration*, 119 F.3d at 792

20  (reputation for dishonesty a permissible ground for finding claimant not credible).  In any event,

21  Plaintiff has not provided this Court with relevant legal authority in support of his claim that the

22  ALJ's consideration of this information was improper.

23        Lastly, even had the ALJ erred regarding a reason to discount Plaintiff's credibility, and

24  this Court does *not* so find, there is more than substantial evidence to support ALJ Webster's

25  other findings on this record.  *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d

26  1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1197)

27

28                                          20

(9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion' such is deemed harmless and does not warrant reversal"); *Tonapetyan v. Halter*, 242 F.3d at 1148.

In sum, the ALJ made specific findings and identified the testimony he found not credible, as well as the evidence in the record that led to his conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991). Thus, the ALJ's findings are supported by substantial evidence and are free of legal error.

### The Findings at Step Five

Finally, Plaintiff argues that the ALJ failed to meet his burden at step five because "his RFC finding and hypothetical question to the VE did not accurately reflect Plaintiff's limitations." (Doc. 15 at 19-20.) The Commissioner asserts the RFC was proper and the question was thus appropriate. (Doc. 21 at 9-10.)

At step five of the sequential analysis, the RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff's argument regarding the ALJ's findings at step five is not well taken. That Plaintiff takes issue with the fact the ALJ did not incorporate every limitation Plaintiff desires does not amount to error. In this matter, the ALJ performed his duty properly by considering all relevant evidence. In fact, his analysis is detailed and thorough. *See* AR 11-17.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . .." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.  *Embrey*, 849 F.2d at 422.  Nevertheless, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).  Here, ALJ Webster posed a number of hypothetical questions to the VE setting out the various limitations and restrictions. AR 52-56.  Plainly, ALJ Webster's RFC is based upon those limitations he found to be credible and supported by the evidence.

In conclusion, the ALJ did not err at step five regarding either the RFC or hypothetical questions posed, and his findings are supported by substantial evidence.

//

//

//

//

//

//

//

//

//

//

//

//

//

22

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Stan P. Harris.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 30, 2011**          _____/s/ **Gary S. Austin**_____
UNITED STATES MAGISTRATE JUDGE

23